*882 OPINION OF THE COURT
Michael C. Lynch, J.
Plaintiff commenced this action by summons with notice dated June 23, 2008 (amended July 31, 2008) to recover $44,878, a sum purportedly due and owing under an agreement to board and care for nine horses owned by defendant Star Track Farms at the State University of New York (SUNY) Cobleskill Equestrian Center (hereinafter, the Center). Now, by order to show cause dated August 22, 2008 (Devine, J.), plaintiff seeks an order pursuant to Lien Law § 183, Lien Law article 9 (Lien Law § 200 et seq.), and CPLR 2702, authorizing the sale of 10 thoroughbred horses at an auction conducted by the New York Breeders Sales Company, Inc., scheduled to occur in Saratoga Springs, New York, on October 12, 2008.
Lien Law § 183 provides, in pertinent part:
“[A] person keeping a livery stable, or boarding stable for animals, . . . has a lien dependent upon the possession upon each . . . animal kept, pastured or boarded by him, . . . provided an express or implied agreement is made with the owners thereof, . . . for the sum due him for the professional service rendered, care, keeping, boarding or pasturing of the animal, . . . under the agreement, and may detain the . . . animal . . . accordingly, until such sum is paid.”
Here, in support of its order to show cause, plaintiff submits an affidavit by Mr. Whelihan, the codirector of the University’s Equestrian Center. He explains that the Center and Mr. Winston, the defendant and owner of defendant Star Track Farms, began a “boarding relationship” with the Center in 2004. He avers that Mr. Winston is currently boarding five mares, one yearling, and four weanlings at the Center.[1] According to Mr. Whelihan, he and Mr. Winston discussed “directly” the terms of the agreement, but that no written contract was ever executed (Whelihan affidavit 1i 3). In sum, according to Whelihan:
“The agreement reached was that the Center would provide basic and health care, as well as attend to all reproduction work. Veterinary charges would be billed directly to Mr. Winston, but all other costs *883 would be paid by the Center and billed to Mr. Winston with the boarding fees. The fees were billed through the Office of the Agriculture Division of SUNY Cobleskill.” (Id.)
Plaintiff also submits an affidavit by the controller for SUNY Cobleskill. She avers that as of July 31, 2008, defendants owe $50,760 for the boarding and care of horses at the Center (Biron affidavit ¶ 2). The last payment on the account, in the amount of $4,000, was made on September 11, 2007 (id. ¶ 3).
CPLR 2702 provides:
“On motion of any party, the court may order the sale, in such manner and on such terms as it deems proper, of any personal property capable of delivery which is the subject of the action if it shall appear likely that its value will be substantially decreased during the pendency of the action. Any party to the action may purchase such property at a judicially-directed sale held pursuant to his section without prejudice to his claim.”
The exercise of this court’s discretionary authority to order a sale
“should not be undertaken lightly, especially when it appears that the proceeds of the sale may not be as adequate as the property itself in providing redress to the prevailing party. Mere inconvenience of administration of the property or the possibility that it will decline in value are insufficient bases on which to justify a sale.” (Weinstein-Korn-Miller, NY Civ Prac ¶ 2702.01).
In support of the order to show cause, Mr. Whelihan explains,
“[T]he value of the horses at sale will be maximized if sold at the Fall Mixed Sale public auction . . . This sale is preferred over other large auctions first because it is local, and second because Saratoga is an ideal venue for a thoroughbred horse sale due to the proximity to individuals involved in the horse and racing industry who are interested in purchasing horses bred in New York State” (Whelihan affidavit ¶ 8).
Further, Whelihan avers that the value of the yearling, which was bred for racing, “will diminish substantially if his training as a racehorse does not commence this fall. October is the ideal time for his training to begin, but defendants have not requested (nor paid for) the training of this yearling” (¶ 11). Whelihan also explains,
*884 “It is imperative that these horses be sold as soon as possible because SUNY Cobleskill has been wholly responsible for the costs of their care and boarding for several months and the horses are occupying stalls that could be offered to other clients. This is a financial burden on the Center and the academic program” (¶ 10).
In opposition to plaintiffs order to show cause, defendant Mr. Winston submits an affidavit wherein he challenges Mr. Whelihan’s characterization of the terms of the oral agreement between them. He does acknowledge that Star Track was obligated to pay the Center, but he contends that the parties also agreed that the Center could use the horses to train SUNY Cobleskill students without charge (Winston affidavit ¶ 4). He also avers that prior to the commencement of the instant lawsuit, he attempted, without success, to obtain additional information with respect to the amounts purportedly due (¶¶ 10-11).
In addition to challenging the amount of the lien asserted by plaintiff, defendant challenges its assertion that the horses should be sold now. Winston explains that the value of the mares, if sold now, is diminished because none is “in foal” (pregnant). According to Winston, the “optimal months” for breeding the mares are February through May. Winston explains, therefore, that a barren mare sold today is less valuable because a prospective purchaser today would have to bear the expense of boarding and keeping the horse through the winter before breeding season (¶ 12). With respect to the yearling, defendant’s counsel avers that the Center is not prohibited from commencing training now. Plaintiff does not dispute these assertions.
On the record presented, the court declines to issue an order pursuant to CPLR 2702 directing the immediate sale of the horses. There is a clear factual dispute with respect to the amount due the Center and there is no evidence with respect to the value of the horses. On the latter point, it is acknowledged that plaintiff opines, that the proceeds of the sale are unlikely to exceed the amount of the lien it has asserted (Whelihan affidavit ¶ 15). Finally, in the court’s view, the record fails to demonstrate, as is necessary here, that the value of either the mares or the yearling will “substantially decrease” if the horses are not sold now.
Plaintiffs claim that it is entitled to “proceed to sale” pursuant to Lien Law § 200 is misplaced (see Blake affirmation in fur *885 ther support ¶ 2). As noted by plaintiffs counsel, a lienor may enforce a lien by selling the property at issue without court order (id.), provided that there is compliance with the procedures set forth in the statute (Lien Law § 200 et seq.; see e.g. Matter of Nachman v Crawford, 114 AD2d 672 [1985]). Here, it does not appear that plaintiff has availed itself of this remedy.[2]
Accordingly, based on the foregoing, plaintiffs request for an order pursuant to CPLR 2702 directing the immediate sale of 10 thoroughbreds is denied, without costs.

. By correspondence dated October 7, 2008, counsel for plaintiff advises that it is no longer seeking an order permitting the sale of the four weanlings, but that it continues to seek authorization to sell the yearling and five mares.

. The record is not clear with respect to plaintiffs claim with respect to the application of article 9 of the Lien Law. Plaintiff does submit a letter dated April 7, 2008, sent via certified mail, return receipt requested, to defendant Winston (Blake affirmation in support of order to show cause, exhibit E). Therein, counsel for SUNY Cobleskill writes to advise that the Center is asserting a lien pursuant to Lien Law § 183 against nine horses. Counsel cautions that the college will proceed to sell the horses to satisfy the lien pursuant to Lien Law § 200, but the letter does not comply with the notice of sale requirements set forth in Lien Law § 201.